# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DAVID JACOBS and GARY HINDES, on behalf of themselves and all others similarly situated, and derivatively on behalf of the Federal National Mortgage Association and Federal Home Loan Mortgage Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>THE FEDERAL HOUSING FINANCE AGENCY, in its capacity as Conservator of the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation, and THE UNITED STATES DEPARTMENT OF THE TREASURY,<br><br>Defendants,<br><br>and<br><br>THE FEDERAL NATIONAL MORTGAGE ASSOCIATION and THE FEDERAL HOME LOAN MORTGAGE CORPORATION,<br><br>Nominal Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 15-708 |

## REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS
## <u>FIRST AMENDED COMPLAINT BY FHFA, FANNIE MAE, AND FREDDIE MAC</u>

Robert J. Stearn, Jr. (DE Bar No. 2915)
Robert C. Maddox (DE Bar No. 5356)
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
stearn@rlf.com
maddox@rlf.com

*Attorneys for Defendants Federal Housing
Finance Agency, Federal National Mortgage
Association, and Federal Home Loan
Mortgage Corporation*

Howard N. Cayne (admitted *pro hac vice*)
Asim Varma (admitted *pro hac vice*)
David B. Bergman (admitted *pro hac vice*)
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue
Washington, DC 20001
(202) 942-5000
Howard.Cayne@apks.com
Asim.Varma@apks.com
David.Bergman@apks.com

*Attorneys for Defendant Federal Housing
Finance Agency*

Michael Joseph Ciatti
(admitted *pro hac vice*)
Graciela Maria Rodriguez
(admitted *pro hac vice*)
King & Spalding LLP
1700 Pennsylvania Avenue N.W.
Washington, DC 20006
(202) 626-5508
(202) 626-3737
mciatti@kslaw.com
gmrodriguez@kslaw.com

*Attorneys for Defendant Federal Home
Loan Mortgage Corporation*

Dated:  July 17, 2017

Jeffrey W. Kilduff
Michael Walsh
O'Melveny & Meyers LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
(202) 383-5300
jkilduff@omm.com
mwalsh@omm.com

*Attorneys for Defendant Federal National
Mortgage Association*

# **TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................3

I.     Section 4617(f) Bars Plaintiffs' Claims................................................................3

       A.     Section 4617(f) Applies, Notwithstanding Allegations that the
Conservator Violated State Law, Because the Conservator Acted Within
Its Statutory Powers and Functions in Executing the Third Amendment...............3

       B.     Plaintiffs' Arguments Against Application of Section 4617(f) Fail.......................8

II.    HERA Bars Stockholder Claims During Conservatorship Because the
Conservator Succeeds to All Such Claims With No Exception For Alleged
Conflicts-of-Interest..........................................................................................11

III.   The Treasury Preferred Stock, as Amended by the Third Amendment, Complies
with Federal Law—the Only Law that Applies to It—and also with State Law ...............14

       A.     Federal Law Applies and Permits the Third Amendment ....................................15

       B.     Even If State Law Applied, the Treasury Stock Certificates, As
Amended by the Third Amendment, Comply With Delaware and
Virginia Law ........................................................................................................18

CONCLUSION.................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allis-Chalmers Corp v. Lueck,*
  471 U.S. 202 (1985)................................................................................16

*Bank of Manhattan v. FDIC,*
  778 F.3d 1133 (9th Cir. 2015) ..............................................................7, 8

*Bender v. CenTrust Mortg. Corp.,*
  51 F.3d 1027 (11th Cir. 1995) ...................................................................7

*Bender v. CenTrust Mortg. Corp.,*
  833 F. Supp. 1540 (S.D. Fla. 1992) ...........................................................7

*Brown v. Gardner,*
  513 U.S. 115 (1994)................................................................................13

*Chevron v. Natural Res. Def. Council,*
  467 U.S. 837 (1984)................................................................................15

*City of Arlington v. FCC,*
  133 S. Ct. 1863 (2013)..............................................................................8

*Collins v. FHFA,*
  --- F. Supp. 3d ----, 2017 WL 2255564 (S.D. Tex. May 22, 2017) ...........1

*Cont'l W. Ins. Co. v. FHFA,*
  83 F. Supp. 3d 828 (S.D. Iowa 2015) ........................................................1

*Courtney v. Halleran,*
  485 F.3d 942 (7th Cir. 2007) ..................................................................10

*Cty. of Sonoma v. FHFA,*
  710 F.3d 987 (9th Cir. 2013) ....................................................................9

*Cunningham v. R.R. Ret. Bd.,*
  392 F.3d 567 (3d Cir. 2004)....................................................................13

*DeLeon v. Att'y Gen.,*
  622 F.3d 341 (3d Cir. 2010)....................................................................13

*Drewry-Hughes Co. v. Throckmorton,*
  92 S.E. 818 (Va. 1917)......................................................................19, 20

Page

*Edwards v. Deloitte & Touche, LLP*,
  No. 16-21221-CIV, 2017 WL 1291994 (S.D. Fla. Jan. 18, 2017)..........................................16

*Gross v. Bell Sav. Bank PaSA*,
  974 F.2d 403 (3d Cir. 1992)...............................................................................................5, 7, 8

*In re Landmark Land Co. of Carolina*,
  No. 96-1404, 1997 WL 159479 (4th Cir. Apr. 7, 1997) ...........................................................5

*Jama v. Immigration & Customs Enf't*,
  543 U.S. 335 (2005)...............................................................................................................13

*Johnson v. Johnson & Briggs, Inc.*,
  122 S.E. 100 (Va. 1924) ........................................................................................................20

*Jones Apparel Grp., Inc. v. Maxwell Shoe Co.*,
  883 A.2d 837 (Del. Ch. 2004)................................................................................................18

*Kain v. Angle*,
  69 S.E. 355 (Va. 1910)...........................................................................................................19

*Matulich v. Aegis Commc'ns Grp., Inc.*,
  942 A.2d 596 (Del. 2008) .................................................................................................18, 19

*MBIA Ins. Corp. v. FDIC*,
  708 F.3d 234 (D.C. Cir. 2013) .................................................................................................7

*Meritage Homes v. FDIC*,
  753 F.3d 819 (9th Cir. 2014) ...................................................................................................8

*Merrill Lynch v. Dabit*,
  547 U.S. 71 (2006)..................................................................................................................13

*Mile High Banks v. FDIC*,
  No. 11-cv-01417, 2011 WL 2174004 (D. Colo. June 2, 2011) .................................................8

*Murray Energy Corp. v. Adm'r of Envtl. Prot. Agency*,
  --- F.3d ----, 2017 WL 2800841 (4th Cir. June 29, 2017).........................................................9

*Nat'l Tr. for Historic Pres. v. FDIC*,
  995 F.2d 238 (D.C. Cir. 1993) .............................................................................................6, 9

*Pagliara v. Fannie Mae*,
  No. 1:16cv193 (D. Del.) .........................................................................................................12

*Pagliara v. Fannie Mae*,
  No. CV 12105-VCMR, 2017 WL 2352150 (Del. Ch. May 31, 2017) ....................................12

Page

*Pagliara v. Federal Home Loan Mortg. Corp.*,
    203 F. Supp. 3d 678, 686-89 (E.D. Va. 2016) ....................................................12

*Perry Capital LLC v. Mnuchin*,
    848 F.3d 1072 (D.C. Cir. 2017) .................................................... *passim*

*Ridder v. CityFed Fin. Corp.*,
    47 F.3d 85 (3d Cir. 1995) ..........................................................................8

*Roberts v. FHFA*,
    --- F. Supp. 3d ----, 2017 WL 1049841 (N.D. Ill. Mar. 20, 2017 ......................1, 4, 9

*Robinson v. FHFA*,
    223 F. Supp. 3d 659 (E.D. Ky. 2016) ..........................................................1, 9

*Rosa v. Resolution Tr. Corp.*,
    938 F.2d 383 (3d Cir. 1991)....................................................................5, 6, 7, 8

*RPM Invs., Inc. v. RTC*,
    75 F.3d 618 (11th Cir. 1996) ........................................................................5

*Saxton v. FHFA*,
    --- F. Supp. 3d ----, 2017 WL 1148279 (N.D. Iowa Mar. 27, 2017) ....................1, 9

*SCA Hygiene Products Aktiebolag v. First Quality Baby Prods., LLC*,
    137 S. Ct. 954 (2017)........................................................................11, 13

*Sharpe v. FDIC*,
    126 F.3d 1147 (9th Cir. 1997) .......................................................................7, 8

*Shintom Co. v. Audiovox Corp.*,
    No. Civ.A. 693-N, 2005 WL 1138740 (Del. Ch. May 4, 2005) .............................19

*Shintom Co. v. Audiovox Corp.*,
    888 A.2d 225 (Del. 2005) ...........................................................................19

*Si Min Cen v. Attorney Gen.*,
    825 F.3d 177 (3d Cir. 2016).........................................................................13

*Surrick v. Killion*,
    449 F.3d 520 (3d Cir. 2006).........................................................................16

*United States v. Oakland Cannabis Buyers' Co-op.*,
    532 U.S. 483 (2001)...................................................................................14

*Volges v. RTC*,
    32 F.3d 50 (2d Cir. 1994) ..............................................................................6

Page

*Ward v. RTC*,
996 F.2d 99 (5th Cir. 1993) ...............................................................6, 9

*Warger v. Shauers*,
135 S. Ct. 521 (2014)............................................................................14

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
401 U.S. 321 (1971)...............................................................................13

**STATUTES**

12 U.S.C.
§ 1452(b)(1) ................................................................................2, 15
§ 1452(c)(3) ........................................................................................17
§ 1455(f).......................................................................................2, 15, 17
§ 1718(a) .....................................................................................2, 15, 17
§ 1718(c)(1) ...................................................................................2, 15
§ 1723(b) ..............................................................................................17
§ 1821(j).................................................................................... *passim*
§ 4617(a)(5) .........................................................................................14
§ 4617(b)(2)(A)(i)....................................................................2, 11, 15
§ 4617(b)(2)(G)......................................................................................8
§ 4617(b)(2)(J).................................................................................4, 15
§ 4617(b)(3)-(9), (c)...........................................................................10
§ 4617(d).................................................................................................7
§ 4617(f)..................................................................................... *passim*

Va. Code § 13.1-638(C)(3) ......................................................................19

**OTHER AUTHORITIES**

12 C.F.R. § 1239.3 (2015) .......................................................................15

12 C.F.R. § 1710.10 (2002) ...............................................................15, 16

67 Fed. Reg. 38361 (June 4, 2002) ........................................................16

Freddie Mac, 8th Am. & Restated Cert. Design. for Common Stock
(http://goo.gl/lkj0S0)..........................................................................20

**INTRODUCTION**

Plaintiffs are among the many Enterprise stockholders that have filed claims challenging the Conservator's authority to enter into the Third Amendment. *Every* court that has considered such claims over the last three years has dismissed them as barred by federal law.[1]  Plaintiffs largely ignore these decisions; although they briefly (and unsuccessfully) attempt to critique the D.C. Circuit's opinion in *Perry Capital*, they fail to acknowledge the litany of other decisions rejecting the same arguments Plaintiffs advance here.

The only new argument Plaintiffs present is that the corporate laws of Delaware and Virginia purportedly override governing federal law and prohibit the Conservator from setting a preferred stock dividend that may leave the Enterprises with insufficient capital to pay dividends on more junior shares.  That argument is wrong and cannot save the First Amended Complaint (the "Complaint" or "FAC") from dismissal.

First, even if state law, rather than federal law, governs—and it does not—Plaintiffs' claims still would be barred by 12 U.S.C. § 4617(f).  The Third Circuit and numerous other courts across the country have interpreted Section 4617(f)'s statutory language to mean that courts *cannot* enjoin Conservator conduct for alleged violations of state law, so long as the Conservator was carrying out one of its statutory powers and functions.  Here, the Conservator acted squarely within its broad powers in agreeing to amend, via the Third Amendment, the financing agreements by which Treasury provided the Enterprises a critical lifeline of hundreds

---

[1]   *See Perry Capital LLC v. Mnuchin*, 848 F.3d 1072, 1086-1096 (D.C. Cir. 2017); *Collins v. FHFA*, --- F. Supp. 3d ----, 2017 WL 2255564, at *3-4 (S.D. Tex. May 22, 2017) (appeal pending at No. 17-20364 (5th Cir.)); *Roberts v. FHFA*, --- F. Supp. 3d ----, 2017 WL 1049841, at *7-8 (N.D. Ill. Mar. 20, 2017) (appeal pending at No. 17-1880 (7th Cir.)); *Saxton v. FHFA*, --- F. Supp. 3d ----, 2017 WL 1148279, at *9-11 (N.D. Iowa Mar. 27, 2017) (appeal pending at No. 71-1727 (8th Cir.)); *Robinson v. FHFA*, 223 F. Supp. 3d 659, 668-671 (E.D. Ky. 2016)  (appeal pending at No. 16-6680 (6th Cir.)); *Cont'l W. Ins. Co. v. FHFA*, 83 F. Supp. 3d 828, 840 n.6 (S.D. Iowa 2015); *Perry Capital LLC v. Lew*, 70 F. Supp. 3d 208, 222 (D.D.C. 2014), *aff'd in relevant part*, 848 F.3d 1072 (D.C. Cir. 2017).

of billions of taxpayer dollars.  Section 4617(f) thus bars all of Plaintiffs' claims, which seek in various ways to enjoin the Third Amendment and unwind the transaction.

Second, another provision of federal law irrevocably vests the Conservator with "all rights, titles, powers, and privileges" of the Enterprises *and* their stockholders, meaning that all stockholder claims are barred during conservatorship.  12 U.S.C. § 4617(b)(2)(A)(i).  Plaintiffs attempt to avoid the dispositive effect of HERA's succession clause by arguing their claims are solely direct, not derivative.  But Plaintiffs' own Complaint defines each claim as "Direct and Derivative," and those claims are purely derivative in substance as well.  Plaintiffs ask the Court to create a "conflict of interest" exception to HERA, but such an exception is not found in the text, and every court that has considered such an exception has rejected it.

Third, in addition to being barred by federal law, Plaintiffs' Counts I and II fail to state a claim.  Federal law—not state law—applies to the Enterprises' issuance of preferred stock, and federal law expressly authorizes the Enterprises to (1) issue preferred stock "on such terms and conditions as the board of directors shall prescribe" (12 U.S.C. § 1718(a); *id*. § 1455(f)), and (2) make dividend payments to Enterprise stockholders in the manner "as may be declared by the board of directors."  *Id*. § 1718(c)(1); *id*. § 1452(b)(1).  The Enterprises' election to follow state law corporate governance practices with respect to *other* issues, and only when not in conflict with federal law, does not circumscribe the Conservator's broad powers under federal law.

Fourth, even if state law controlled, Plaintiffs' claims still would fail because the Third Amendment does not violate the state statutory provisions on which Counts I and II are based.[2]

---

[2]   Counts III and IV for unjust enrichment are asserted against Treasury only.  *See* Mot. for Leave to Amend at 4 (D.I. 48) ("The only addition to the Complaint is the inclusion of unjust enrichment claims against Treasury.").  Those claims are "predicated on" the same alleged violations of the DGCL and Virginia Code asserted in Counts I and II and thus "rise and fall with these statutory claims."  *Id*. at 7.

The Treasury dividends are senior in preference to all other stockholders and paid at a rate that is stated in the Treasury Stock Certificate.  This is all the state statutes call for.

Plaintiffs' Complaint should be dismissed in its entirety.

## ARGUMENT

This Court previously observed that whether HERA bars Plaintiffs' claims is the "more specific question at issue in this case," and is potentially case-dispositive.  Order at 2 n.1 (D.I. 50).  The Court thus denied Plaintiffs' request to certify various questions of state law to the Supreme Courts of Delaware and Virginia.  *Id*.  Despite this, Plaintiffs invert their arguments, contending first that the Third Amendment fails to comply with state law before turning to the HERA-specific issues.  Consistent with this Court's ruling and their prior briefing, the FHFA Defendants address the threshold, case dispositive HERA issues first.

## I.   Section 4617(f) Bars Plaintiffs' Claims

Plaintiffs seek far-reaching relief that would enjoin the Third Amendment and unwind the transaction.   Plaintiffs thus seek to substitute their judgment for the Conservator's with respect to the appropriate way to capitalize and operate the Enterprises.  Section 4617(f) bars such claims because they seek relief that would "restrain or affect the exercise of powers or functions of [FHFA] as a conservator."  *See* FHFA Opening Br. 10-19 ("FHFA OB"); Treasury Opening Br. 10-14 ("TOB").  Plaintiffs' arguments against Section 4617(f) fail.

### A.   Section 4617(f) Applies, Notwithstanding Allegations that the Conservator Violated State Law, Because the Conservator Acted Within Its Statutory Powers and Functions in Executing the Third Amendment

Plaintiffs concede that Section 4617(f) bars their claims if the Conservator acted within its powers or functions when it executed the Third Amendment.  *See* Plaintiffs' Opp. Br. 33-35 ("PB").  Nevertheless, Plaintiffs argue that Section 4617(f) does not bar Plaintiffs' claims because the Third Amendment is allegedly contrary to state law.  In particular, Plaintiffs contend

3

that the Enterprises themselves would not have been permitted to execute the Third Amendment because it allegedly violates "the state corporate law governing Fannie and Freddie," and that the Conservator "simply does not have, and cannot, exercise powers that Fannie and Freddie themselves do not have."  PB 33; *see also* PB 37 (arguing the Conservator "must comply with the same state corporate laws that governed these entities' [*sic*] prior to the conservatorship"); PB 40 n.37 (arguing the Conservator's powers are "no broader than the powers Fannie and Freddie themselves have under state corporate law").  Under Plaintiffs' theory, if the Conservator executed the Third Amendment in violation of state law, then it acted outside of its statutory powers and functions and Section 4617(f) does not apply.  PB 33-38.  Plaintiffs' theory is wrong for numerous reasons.

As an initial matter, federal law—not state law—governs the Enterprises' (and thus the Conservator's) issuance of preferred stock, as explained further below.  *See infra* Sec. III(A).  Moreover, the Conservator's own statutory powers and functions are "extraordinarily broad" (*Perry Capital*, 848 F.3d at 1087) and "expansive" (*Roberts*, 2017 WL 1049841, at *2), reaching well beyond the limits of what the Enterprises may do under governing law outside of the conservatorship context.[3]

Most significantly, Plaintiffs' argument that Section 4617(f) does not apply when the Conservator is alleged to have violated state (or federal) law is contrary to the law of this circuit.  The Third Circuit repeatedly has held—when interpreting FIRREA's materially-identical statutory bar (12 U.S.C. § 1821(j))—that so long as a conservator or receiver is carrying out one

---

[3]   For example, the Conservator may "take any action authorized by this section, which the Agency determines is in the best interests of the regulated entity *or the Agency*." 12 U.S.C. § 4617(b)(2)(J) (emphasis added).  Congress "thus made a deliberate choice in [HERA] to permit FHFA to act in its own best governmental interests," which "directly undermines" the notion that "Congress intended FHFA to be nothing more than a common-law conservator."  *Perry Capital*, 848 F.3d at 1089 & 1094.

of its statutorily defined powers or functions, courts are prohibited from enjoining that conduct, *even if* the conservator or receiver allegedly violated state law, federal law, or its own regulations in the process.  For example, in *Rosa v. Resolution Trust Corp.*, the plaintiffs attempted to enjoin the RTC as conservator and receiver based on its alleged violation of ERISA.  938 F.2d 383 (3d Cir. 1991).  As here, the plaintiffs in *Rosa* argued that "while RTC as conservator and receiver is authorized to run the affairs of a troubled institution . . . it is only authorized to run them in a legal manner."  *Id.* at 397.  The plaintiffs argued that "illegal" conduct "was not among the 'powers or functions of the Corporation as a conservator or a receiver.'"  *Id.*  The Third Circuit squarely rejected this argument: "[w]e find no such limitation in the language of § 1821(j)."  *Id.* The court instead held that the powers of the conservator and receiver are "defined by" their governing statute, FIRREA, without any exception or limitation for compliance with other laws. *Id.* at 398.  The Third Circuit concluded that the RTC's actions fit within its "quite broad" statutory powers as conservator and receiver, and thus Section 1821(j) barred plaintiffs' demands for equitable relief.  *Id.*  The court "naturally express[ed] no opinion as to the alleged wrongfulness of RTC's conduct."  *Id.* at 400; *see also Gross v. Bell Sav. Bank PaSA*, 974 F.2d 403, 407 (3d Cir. 1992) (reaffirming *Rosa* and observing that "where the [conservator or receiver] performs functions assigned it under the statute, injunctive relief will be denied *even where [it] acts in violation of other statutory schemes*" (emphasis added)).

Since *Rosa* and *Gross*, many other courts—including the Fourth, Fifth, Eleventh, and D.C. Circuits—also have embraced the same principle, holding that compliance with other laws, including state laws, cannot constrain the powers and functions of a conservator or receiver.[4]

---

[4]     *See, e.g.*, *In re Landmark Land Co. of Carolina*, No. 96-1404, 1997 WL 159479, at *4 (4th Cir. Apr. 7, 1997) ("The mere fact that an action of the FDIC [as conservator or receiver] may violate state contract law . . . does not entitle a federal court to enjoin the FDIC . . . ."); *RPM*

*[Footnote continues on following page]*

5

Indeed, to hold otherwise would effectively negate the jurisdiction-withdrawal provisions of Sections 4617(f) and 1821(j), as every claim against a conservator or receiver necessarily alleges some type of unlawful conduct, which—under Plaintiffs' view—would remove the protections of—and thus nullify—the statute. *See Rosa*, 938 F.2d at 397 (observing that a limitation on Section 1821(j) for compliance with other laws "would undermine the purpose of the statute, namely, to permit [the] conservator or receiver to function without judicial interference"); *Volges*, 32 F.3d at 52-53 ("If every party to an executory contract entered into by the [conservator or receiver] could obtain injunctive relief to prevent an alleged breach, the anti-injunction mandate would be severely restricted, if not meaningless.").

Plaintiffs themselves reluctantly acknowledge this principle in a footnote, observing that these Third Circuit and other "cases are best understood to mean only that Section 1821(j) applies even when a conservator or receiver violates some law *other* than FIRREA." PB 40 n.37 (emphasis in original). But state law is itself "some law *other* than [HERA]," and thus Section 4617(f) applies despite Plaintiffs' allegations of non-compliance with those state laws. Plaintiffs' only attempt to reconcile this fatal flaw in their argument is to assert (without support) that all state laws effectively are collapsed into HERA, and thus the Conservator must comply

---

*[Footnote continued from previous page]*
*Invs., Inc. v. RTC*, 75 F.3d 618, 621 (11th Cir. 1996) ("Even claims seeking to enjoin the RTC [as conservator or receiver] from taking allegedly unlawful actions [*i.e.*, breaching a contract] are subject to the jurisdictional bar of 1821(j)."); *Volges v. RTC*, 32 F.3d 50, 52 (2d Cir. 1994) ("The fact that the [conservator's or receiver's conduct] might violate [plaintiff]'s state law contract rights does not alter the calculus [under Section 1821(j)]."); *Ward v. RTC*, 996 F.2d 99, 103 (5th Cir. 1993) (rejecting illegality limit on receiver's powers and observing the plaintiff "fails (or refuses) to recognize the difference between the exercise of a function or power that is clearly outside the statutory authority of the RTC on the one hand [and thus not protected by Section 1821(j)], and improperly or even unlawfully exercising a function or power that is clearly authorized by statute on the other [and thus protected by Section 1821(j)]"); *Nat'l Tr. for Historic Pres. v. FDIC*, 995 F.2d 238, 240 (D.C. Cir. 1993) ("We do not think it possible, in light of the strong language of § 1821(j), to interpret the FDIC's 'powers' and 'authorities' to include the limitation that those powers be subject to—and hence enjoinable for non-compliance with—any and all other federal laws.").

with all state laws in order to comply with HERA and gain the protections of Section 4617(f). PB 40 n.37. But not only is this argument wrong as a factual matter—the Enterprises are governed by federal law and the Conservator has demonstrably broader powers than the Enterprises—it is merely a regurgitation of the same argument rejected in *Rosa* and *Gross*. Plaintiffs cannot plead around Section 4617(f) by alleging violations of state (or other) laws.

Plaintiffs fare no better in arguing the Conservator allegedly breached Plaintiffs' contracts without following the repudiation procedures outlined in 12 U.S.C. § 4617(d). *See* PB 38-39. As an initial matter, this argument fails because Plaintiffs no longer assert any breach of contract claims in their complaint; Plaintiffs dropped those claims in order to "streamline this litigation . . . in favor of the primary issue raised by the Complaint," the alleged violations of state statutes concerning preferred dividends. *See* Mot. for Leave to Amend at 7 (D.I. 48). Accordingly, the Court should disregard Plaintiffs' contract-related arguments.

In all events, Plaintiffs' repudiation argument is simply a reformulation of their failed argument that the Conservator can be enjoined for allegedly failing to comply with state law, including regarding contract rights. The related allegation that the Conservator failed to repudiate within a reasonable time does not mean the Conservator acted outside its authority, and cannot avoid the jurisdictional bar of Section 4617(f). *See MBIA Ins. Corp. v. FDIC*, 708 F.3d 234, 247 (D.C. Cir. 2013) (applying Section 1821(j) notwithstanding allegation that the receiver failed to repudiate a contract in a timely manner under FIRREA); *Bender v. CenTrust Mortg. Corp.*, 833 F. Supp. 1540, 1542-43 (S.D. Fla. 1992) *aff'd*, 51 F.3d 1027 (11th Cir. 1995) (same, despite allegation that receiver's repudiation of contract was beyond the scope of its authority).

Plaintiffs also cite two Ninth Circuit decisions—*Sharpe v. FDIC*, 126 F.3d 1147 (9th Cir. 1997) and *Bank of Manhattan v. FDIC*, 778 F.3d 1133 (9th Cir. 2015) (PB 37-39)—but those

decisions are inapt and unpersuasive.  Both addressed breach of contract claims, which are no longer at issue in this case.  *See Meritage Homes v. FDIC*, 753 F.3d 819, 825 (9th Cir. 2014) ("*Sharpe* is not controlling outside of its limited context.").  Further, *Bank of Manhattan* held only that FIRREA does not "immunize the FDIC [as receiver] from *damage claims* if it elects to breach pre-receivership contractual arrangements."  778 F.3d at 1134 (emphasis added).  While *Sharpe* declined to apply Section 1821(j) to a claim for alleged breach of a pre-receivership contract, that ruling conflicts with the Third Circuit's *Rosa* and *Gross* decisions, which hold that the statutory bar applies even where the conservator or receiver is alleged to have acted unlawfully.  *See also Mile High Banks v. FDIC*, No. 11-cv-01417, 2011 WL 2174004, at *3 (D. Colo. June 2, 2011) (finding *Sharpe* "not . . . persuasive" and citing *Gross*).  *Sharpe* also conflicts with the decisions of several other circuits as well.  *See supra* n.4.[5]

## B.  Plaintiffs' Arguments Against Application of Section 4617(f) Fail

The Third Amendment plainly falls within the Conservator's broad statutory powers and functions as enumerated in HERA.  *See* FHFA OB 13-18; TOB 12-13.  Plaintiffs offer a hodge-podge of arguments to the contrary, all of which fall flat.

First, Plaintiffs argue the Third Amendment is not an agreement to transfer Enterprise assets, which is expressly authorized by 12 U.S.C. § 4617(b)(2)(G), because that provision applies only to asset transfers made by FHFA as "conservator or receiver," and—according to Plaintiffs—FHFA "was not acting in either capacity" when it executed the Third Amendment.

---

[5]    Plaintiffs cite *City of Arlington v. FCC*, 133 S. Ct. 1863 (2013) (PB 35), but that decision is inapposite; it does not address HERA or FIRREA, or even conservators or receivers.  Further, in addressing the FCC, the Court held that courts should *defer* to agencies' interpretation of statutory ambiguity about the scope of their authority.  *Id*. at 1871-72.  Thus, if applicable at all, *City of Arlington* favors deference to FHFA's assessment of the scope of its own powers.  Plaintiffs also cite *Ridder v. CityFed Fin. Corp*., 47 F.3d 85 (3d Cir. 1995) (PB 37), but that decision is likewise inapt; it addressed only whether an entity in receivership was required to advance defense costs pursuant to its bylaws.  *Ridder* does not mention Section 1821(j) or address the scope of a conservator or receiver's power under FIRREA (or HERA).

PB 42.  Not so.  The *first paragraph* of the Complaint concedes that the Third Amendment was executed by FHFA "in its capacity as conservator of Fannie Mae and Freddie Mac."  FAC ¶ 1. In addition, the Third Amendment confirms that it was executed by each Enterprise "acting through [FHFA] as its duly appointed conservator."  *See* FHFA OB, Ex. A at exhibit p. 52.

Moreover, Plaintiffs' argument that FHFA was not acting in its conservatorship capacity because it supposedly failed to "maximize . . . value" boils down to a challenge to the merits and effectiveness of the Conservator's decision to execute the Third Amendment.  *See* PB 43. Section 4617(f) was designed to bar this type of second-guessing.  *See Cty. of Sonoma v. FHFA*, 710 F.3d 987, 993 (9th Cir. 2013) ("[I]t is not our place to substitute our judgment for FHFA's" as Conservator); *Nat'l Tr.*, 995 F.2d at 240 (Section 1821(j) "immuniz[es]" conservator from all "outside second-guessing").  Indeed, in *Ward v. RTC*, the Fifth Circuit rejected the *exact* argument Plaintiffs assert here, holding that an allegation that the receiver "failed to maximize the net present value return from the sale" of the entity's assets cannot avoid the dispositive language of Section 1821(j) (and Section 4617(f)).  996 F.2d at 101, 104.[6]

Relatedly, Plaintiffs assert the Enterprises received "no consideration" in exchange for the Third Amendment.  PB 1, 11; *see also* PB 2 (similar).  But this conflicts directly with the

---

[6]    In a further twist on the "bad job" theory of liability, Plaintiffs also assert the Conservator violated a duty to preserve and conserve Enterprise assets, and an alleged "require[ment]" to "'rehabilitate' the Companies for eventual return to normal business operations."  PB 42-43, n.42.  As numerous courts have held, HERA's plain text defeats this argument.  *See, e.g.*, *Perry Capital*, 848 F.3d at 1088 ("[T]ime and again [HERA] outlines what FHFA as conservator 'may' do and what actions it 'may' take. . . . And 'may' is, of course, 'permissive rather than obligatory.'") (citations omitted); *Robinson*, 223 F. Supp. 3d at 670 (HERA "does not create a mandatory duty, and FHFA's alleged failure to exercise its permissive power under that section does not remove Plaintiff's claims from the ambit of Section 4617(f)'s bar on equitable relief."); *Roberts*, 2017 WL 1049841, at *8 (similar); *Saxton,* 2017 WL 1148279, at *10 (similar).

Moreover, even if there were a purported "duty" it would not be in any sense "judicially enforceable" in light of Section 4617(f).  *See Perry Capital*, 848 F.3d at 1088, 1090.  *Cf. Murray Energy Corp. v. Adm'r of Envtl. Prot. Agency*, --- F.3d ----, 2017 WL 2800841, at *3-5 (4th Cir. June 29, 2017) (holding district court lacked jurisdiction over suit to enforce EPA's "continuous duty" to evaluate employment impact of EPA actions).

facts alleged in the Complaint and the Third Amendment itself.  In the Third Amendment, the Conservator agreed to exchange future payments in an uncertain amount (a variable dividend equal to profits earned) for relief from future obligations (fixed dividends and periodic commitment fee).  *See* FAC ¶¶ 43-45; FHFA OB Ex. A at exhibit pp. 53-55  Consideration thus flowed in both directions, with Treasury accepting the risk that the Enterprises would earn less in dividends.  *See* FHFA OB 9.  Not only is it "elementary" that courts "will not inquire into the adequacy of consideration as long as the consideration is otherwise valid or sufficient to support a promise," 3 Williston on Contracts § 7:21 (4th ed.), Section 4617(f) *also* bars Plaintiffs and the courts from second-guessing whether the consideration for the Third Amendment was favorable enough to the Enterprise, for the reasons discussed above.

Second, Plaintiffs argue the Conservator's statutory power to transfer Enterprise assets is limited by the receivership-distribution priority scheme outlined in HERA.  PB 42 (citing 12 U.S.C. § 4617(b)(3)-(9), (c)).  But the Enterprises are not in receivership, and thus the order of priority for distribution of assets in receivership is inapplicable.  In addition, allegations that a conservator's conduct violates the statutory order of priority for receiverships are insufficient to overcome Section 4617(f).  For example, in *Courtney v. Halleran*, the court rejected plaintiff's argument that an asset transfer was purportedly a "thinly disguised way of circumventing the statutory priority scheme and allowing the [investor] to get more than its proper share."  485 F.3d 942, 945 (7th Cir. 2007).  The "glaring problem" with this argument was that the receiver is specifically authorized to "transfer assets or liabilities without any further approvals," and thus the relief requested was barred by "the anti-injunction language of § 1821(j)."  *Id.* at 948.

Third, Plaintiffs fail in their attempts to distinguish the D.C. Circuit's decision in *Perry Capital LLC*, 848 F.3d at 1072.  Plaintiffs argue *Perry Capital* did not address claims that the

Conservator violated state law by "purporting to exercise a power that Fannie and Freddie themselves do not possess." PB 41 n.39; *see also id*. at 34 n.30. But stockholders in *Perry Capital* similarly alleged that the Conservator violated state law, including by breaching contractual and fiduciary duties, and sought "injunctive and declaratory relief" for those alleged violations. *See Perry Capital*, 848 F.3d at 1084. The D.C. Circuit held that Section 4617(f) barred all such relief because the Conservator exercised its "quintessential" powers and functions in executing the Third Amendment. *Id*. at 1088-89. The court reiterated that the statutory language of Section 4617(f) includes no "limitation" that the Conservator's powers "be subject to—and hence enjoinable for noncompliance with—any and all federal laws," and would "appear to bar a court from acting notwithstanding a parade of possible violations of existing laws." *Id*. at 1086 (internal quotation marks and citations omitted). The same principle applies here. That the stockholders in *Perry Capital* sought to enjoin the Conservator relying upon *other* provisions of state law renders that decision no less persuasive in this case.

## II.     HERA Bars Stockholder Claims During Conservatorship Because the Conservator Succeeds to All Such Claims With No Exception For Alleged Conflicts-of-Interest

A separate provision of HERA, which provides that the Conservator succeeds to "all rights, titles, powers, and privileges" of the Enterprises and their stockholders, 12 U.S.C. § 4617(b)(2)(A)(i), independently bars all of Plaintiffs' claims. *See* FHFA OB 20-24. Plaintiffs disagree, arguing that HERA does not bar them from asserting "direct claims that relate to their ownership of Company stock," (PB 50), and that their claims are "direct," not derivative. PB 45-51. Plaintiffs also argue that HERA's succession clause does not bar their claims because FHFA purportedly has a "manifest conflict of interest." PB 52-55. Plaintiffs are wrong on all fronts.

First, Plaintiffs' claims are derivative for the reasons stated in Treasury's briefs, which the FHFA Defendants adopt and incorporate by reference. *See* TOB Sec. II; Treasury Reply

Sec. III.  Indeed, Plaintiffs allege in the Complaint that Jacobs "*brings this action derivatively* on behalf of and for the benefit of" both Enterprises, FAC ¶ 68 (emphasis added), and define each claim as being "Direct *and Derivative*" in nature.  *Id.* at Counts I-IV (emphasis added).  Plaintiffs make no attempt to reconcile this with their argument that the claims are direct, *not* derivative.

Second, even if Plaintiffs' claims could be considered direct, not derivative, dismissal still would be warranted because the Conservator has succeeded to "*all rights*" of the Enterprise stockholders, without exception.  Plaintiffs point to *Perry Capital*'s holding that HERA does not specifically bar direct suits (PB 51), but Plaintiffs here cannot sue to enforce a right that HERA transferred to FHFA.  The claims Plaintiffs argue are direct are clearly related to the Enterprises and their assets and arise out of Plaintiffs' rights as stockholders.  *See Pagliara v. Federal Home Loan Mortg. Corp.*, 203 F. Supp. 3d 678, 686-89 (E.D. Va. 2016) (holding Freddie Mac shareholder no longer possessed any right to demand books and records inspection due to HERA's succession clause).[7]  Plaintiffs' claims here are barred for the same reason.

Third, there is no "conflict of interest" exception in HERA, because the plain language of HERA leaves no room for such exception.  *See Perry Capital*, 848 F.3d at 1106.  The only courts to have applied a conflict of interest exception—*First Hartford* (Fed. Cir.), and *Delta Savings* (9th Cir.)—have done so in a different context, that of FIRREA receiverships.  Extension of the exception beyond this narrow context has been rejected.  *See* FHFA OB 22-24.

---

[7]     This Court previously remanded to the Chancery Court a books and records complaint brought against Fannie Mae by the same stockholder, Pagliara, who filed the Virginia case.  *See* Order at 1-2 n.1 (D.I. 38) in *Pagliara v. Fannie Mae*, No. 1:16cv193 (D. Del.).  The Chancery Court recently dismissed that action on issue preclusion grounds because another court (the Eastern District of Virginia) previously dismissed a materially identical books and records action Mr. Pagliara brought against Freddie Mac.  *See Pagliara v. Fannie Mae*, No. CV 12105-VCMR, 2017 WL 2352150 (Del. Ch. May 31, 2017).

Plaintiffs contend that "Congress should be understood to have adopted" the interpretation of FIRREA in *First Hartford* and *Delta Savings* when Congress enacted HERA. PB 53. That is wrong: the "rule" is that "where the law is plain"—as the succession language is—"subsequent reenactment" of that language "does not constitute an adoption" of a prior interpretation that is inconsistent with the plain language. *Brown v. Gardner*, 513 U.S. 115, 121 (1994). That is especially true when there is "no direct evidence that Congress ever considered the issue . . . or voiced any views upon it." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 336 n.7 (1971). Moreover, "two circuit court decisions do not so clearly 'settle[ ] the meaning of [the] existing statutory provision' in FIRREA that we must conclude the Congress intended *sub silentio* to incorporate those rulings into [HERA]." *Perry Capital*, 848 F.3d at 1106 (quoting *Merrill Lynch v. Dabit*, 547 U.S. 71, 85 (2006)). Supreme Court precedent is in accord. *See Jama v. Immigration & Customs Enf't*, 543 U.S. 335, 351 (2005) (concluding that the "decisions of two Courts of Appeals" do not reflect a "settled judicial construction nor one which we would be justified in presuming Congress, by its silence, impliedly approved"); *see also SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC*, 137 S. Ct. 954, 965 (2017) (when determining whether Congress intended to codify a purported common law rule, two circuit court holdings "are too few to establish a settled, national consensus").[8]

---

[8] Contrary to Plaintiffs' contention, Third Circuit precedents are not "to the contrary." PB 53. *DeLeon v. Att'y Gen.*, 622 F.3d 341, 355 (3d Cir. 2010) and *Cunningham v. R.R. Ret. Bd.*, 392 F.3d 567, 578 (3d Cir. 2004) (cited at PB 53) are inapposite as they simply address issues of statutory interpretation without discussing whether Congress intended to adopt any prior case law when enacting the statute. Moreover, the decision in *Si Min Cen v. Attorney Gen.* (cited at PB 53) addressed only a preexisting federal regulation that codified the interpretation of a statute by the agency charged with applying that statute, and there was "no question" Congress was aware of that regulation. 825 F.3d 177, 195 & n.14 (3d Cir. 2016). That decision says nothing about how many judicial interpretations of a statute represent a settled meaning. Moreover, interpreting Third Circuit law as Plaintiffs propose would draw it into conflict with both the Supreme Court's decision in *Jama* and the D.C. Circuit's decision in *Perry Capital*.

Plaintiffs also argue that another provision of HERA, 12 U.S.C. § 4617(a)(5), "would be meaningless if stockholders could not sue the conservator derivatively on behalf of the Companies."  PB 54.  Not at all.  In Section 4617(a)(5), Congress provided the "regulated entity" (*i.e.*, Fannie Mae or Freddie Mac) itself—not FHFA as Conservator—a 30-day window in which to challenge the FHFA's appointment of a conservator or receiver.  That limited, statutorily-authorized challenge mechanism—which was never exercised by either of the Enterprises—does not support the creation of a conflict of interest exception.

Additionally, Plaintiffs suggest that not creating such an exception could raise constitutional issues.  PB 51-52.  But Plaintiffs assert no constitutional claims, so their argument in favor of ensuring "judicial review of . . . constitutional claims" (PB 51)  is beside the point.  In all events, constitutional avoidance has no application here.  It "is a tool for choosing between competing plausible interpretations of a provision," *Warger v. Shauers*, 135 S. Ct. 521, 529 (2014) (citation and internal quotation marks omitted), and "has no application in the absence of statutory ambiguity."  *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 494 (2001).  Here, there is no ambiguity in HERA's succession provision.

<u>Finally</u>, Plaintiffs' claims also are barred by the doctrine of issue preclusion for the reasons stated in Treasury's briefs.  *See* TOB Sec. V; Treasury Reply Sec. V.

## III.   The Treasury Preferred Stock, as Amended by the Third Amendment, Complies with Federal Law—the Only Law that Applies to It—and also with State Law

In addition to failing for lack of jurisdiction, Counts I and II—which allege the Third Amendment is void under Delaware and Virginia law—fail to state a claim.  Federal law is the only law that applies, and the Third Amendment complies with it.  In all events, the Third Amendment also complies with the state statutes upon which Plaintiffs rely.

## A.    Federal Law Applies and Permits the Third Amendment

Plaintiffs cannot dispute that the Enterprises are creatures of federal law—*not* state law—created by Congress *via federal statutory charters* that specifically grant the Enterprises (and thus the Conservator) broad discretion to issue "preferred stock on such terms and conditions as the board of directors shall prescribe," 12 U.S.C. § 1718(a); *id.* § 1455(f), and to make dividend payments "as may be declared by the board of directors," *id.* § 1718(c)(1); *id.* § 1452(b)(1). Upon conservatorship, FHFA succeeded to the rights and powers of the Enterprises' boards of directors. *Id.* § 4617(b)(2)(A)(i).  HERA also enables the Conservator to determine how to fund and operate the Enterprises in the manner it determines is in the best interests of the Enterprises *or FHFA*.  *Id*. § 4617(b)(2)(J)(ii).  Because "Congress has directly spoken to the precise question at issue"—whether federal law gives the Enterprises and the Conservator broad discretion to issue preferred stock—"that is the end of the matter," and the Court "must give effect to the unambiguously expressed intent of Congress."  *Chevron v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984).

Nevertheless, Plaintiffs insist that a 2002 OFHEO regulation, 12 C.F.R. § 1710.10 (2002) (currently codified at 12 C.F.R. § 1239.3 (2015)), and the Enterprises' bylaws import state law in a manner that trumps the discretion granted by federal law and renders Treasury's senior preferred stock, as amended by the Third Amendment, void.  PB 14-27.  Plaintiffs are wrong.

The regulation and bylaws expressly did *not* incorporate state law governing preferred stock.  Thus, federal law applies and state law simply does not, rendering any preemption analysis unnecessary.  If, however, the Court accepts Plaintiffs' argument that state law somehow does apply to the issuance of preferred stock, it would be in conflict with and thus preempted by the terms of the 2002 OFHEO regulation, the Enterprises' bylaws, and the Treasury stock certificates.  Plaintiffs' interpretation of state law necessarily would limit the

Enterprises' broad discretion, and thus "'impose[] . . . additional conditions' not contemplated by Congress," *Surrick v. Killion*, 449 F.3d 520, 532 (3d Cir. 2006) (citation omitted), and thereby "frustrate the federal scheme," *Allis-Chalmers Corp v. Lueck*, 471 U.S. 202, 209 (1985).

First, the 2002 regulation was promulgated by OFHEO for the express purpose of giving the Enterprises supervisory guidance on corporate governance issues that were *not already addressed* by governing federal law, including the Enterprises' charters. *See* 67 Fed. Reg. 38361 at 38362 (June 4, 2002). In promulgating the regulation, OFHEO stated that such guidance was *not* needed for certain areas already addressed by the Enterprises' federal charters, including "common and preferred stock." *Id.* at 38362; *see also id.* at 38364 (explaining that "chartering acts contain various specific corporate governance provisions that are clearly within the realm of the congressionally mandated oversight by OFHEO"); *Edwards v. Deloitte & Touche, LLP*, No. 16-21221-CIV, 2017 WL 1291994, at *6 (S.D. Fla. Jan. 18, 2017) (recognizing that Fannie Mae follows Delaware law only "[f]or *issues not addressed* by the charter or federal law" and only "so long as that [state] law is not inconsistent with federal law") (emphasis added).

By directing the Enterprises to elect to "follow" state law for "other" corporate governance purposes for which federal law is "silent," OFHEO provided the Enterprises and their directors with a "safe harbor"—that is, OFHEO would consider conduct that complied with state law to be presumptively safe and sound for OFHEO's supervisory purposes. 67 Fed. Reg. 38362-4. Nevertheless, the regulation made clear that—as had always been the case, even before 2002—the Enterprises' corporate governance practices and procedures must "comply with applicable [*federal*] chartering acts and other *Federal* law, rules, and regulations," 12 C.F.R. § 1710.10(a) (emphasis added), and that Enterprises would "follow" state law corporate governance practices *only* "to the extent not inconsistent with" federal law. *Id.* § 1710.10(b).

16

<u>Second</u>, the Enterprises bylaws were issued pursuant to federal law—not state law—and they likewise broadly authorize the Enterprises to issue preferred stock.  Pursuant to the 2002 regulation, the Enterprises elected in their bylaws to "follow" Delaware and Virginia law on corporate governance issues, but *only* "to the extent not inconsistent with the [federal] Charter Act and other Federal law, rules, and regulations."  PB Ex. A (Fannie Bylaws § 1.05); *see also* PB Ex. B (Freddie Bylaws § 11.3).  Plaintiffs point out that the Enterprises' bylaws contain provisions about preferred stock, and argue that if federal law governed, then those sections of the bylaws would be "nullities."  PB 16.  Not so.  The Enterprises' bylaws were themselves issued pursuant to *federal* law.  12 U.S.C. § 1723(b); *id*. § 1452(c)(3).  Further, Fannie Mae's bylaws authorize the board to issue preferred stock by identifying the "dividend rate or rates" and "the relative preferences in relation to the dividends payable on any other class or classes or series of stock."  PB Ex. A § 2.02.  Freddie Mac's bylaw provision also authorizes the board to issue preferred stock so long as the "preferences" and "privileges" of that stock are "set forth in the certificate of designation."  PB Ex. B § 2.3.  The Third Amendment complies with these broad, enabling bylaw provisions, which were issued pursuant to *federal* law.

<u>Finally</u>, the Treasury stock certificates also are governed by federal law and do not permit the state law (as construed by Plaintiffs) to trump federal law.  Plaintiffs argue that the Treasury stock certificates cannot "override" state law because, according to Plaintiffs, a stock certificate is "a creature of state law" and "would not exist but for applicable state law authorizing its creation and issuance."  PB 19-20.  Plaintiffs are wrong again because *federal* law—not state law—authorizes the Enterprises to issue preferred stock.  *See* 12 U.S.C. § 1718(a); *id.* § 1455(f).  Indeed, the Enterprises issued preferred stock long before 2002 when OFHEO first directed the Enterprises to follow state law for certain corporate governance purposes.  Moreover, the

Treasury stock certificates state that federal law applies, that state law "shall serve as the federal rule of decision" as a gap-filling measure, and that state law does *not* apply "where such [state] law is inconsistent with the Company's enabling [federal] legislation, its public purposes *or any provision of this Certificate*."  FHFA OB Ex. C § 10(e) (emphasis added).  Thus, because the Treasury stock certificates provide for the dividend called for by the Third Amendment, no state law can negate that dividend pursuant to the stock's own terms.

### B.   Even If State Law Applied, the Treasury Stock Certificates, As Amended by the Third Amendment, Comply With Delaware and Virginia Law

Even if the Conservator had to comply with state law relating to the issuance and terms of preferred stock, Counts I and II still would fail to state a claim because the Third Amendment fully complies with the Delaware or Virginia statutes upon which Plaintiffs rely.  Plaintiffs read limitations into these broad enabling statutes that simply are not there.

Plaintiffs primarily argue that the dividend adopted in the Third Amendment "is not paid at a 'rate'" and "is not payable 'in preference to' or 'in relation to' the dividends payable to other classes or series of stock."  PB 26.  But Plaintiffs do not—and cannot—explain how the dividend is not paid at a "rate" (even if set at or near 100%) or how the stock's senior priority position is not "in preference" or "in relation" to other classes of stock.  Plaintiffs' other arguments also fail.

Plaintiffs attempt to trivialize the broad, enabling nature of the DGCL (*see* PB 22), but the DGCL is "widely regarded as the most flexible in the nation," *Jones Apparel Grp., Inc. v. Maxwell Shoe Co.*, 883 A.2d 837, 845 (Del. Ch. 2004).  Indeed, DGCL § 151—the primary section on which Plaintiffs rely—is specifically designed to enable corporations "to provide for the flexible financing that is necessary to meet the unique funding needs of [a particular] enterprise."  *Matulich v. Aegis Commc'ns Grp., Inc.*, 942 A.2d 596, 599 (Del. 2008).  This section provides the company with "a *blank slate* on which to fill in the rights of different

18

classes" of stock, on which "the drafter may parse those rights among multiple classes of stock as he or she sees fit." *Id.* at 599-600 (emphasis added).  DGCL § 151(c) simply "does not . . . require" any particular rate or "any particular form of preference." *Shintom Co. v. Audiovox Corp.*, 888 A.2d 225, 230 (Del. 2005).  Ultimately, Plaintiffs' position is that choosing a dividend rate of 100% (with a diminishing capital buffer) is prohibited by the DGCL while choosing a dividend rate of 0% is permissible.  *See Shintom Co. v. Audiovox Corp.*, No. Civ.A. 693-N, 2005 WL 1138740, at *2 (Del. Ch. May 4, 2005) ("Choosing to set dividend rates at zero is as much an act of setting rates as choosing a substantive rate."), *aff'd.* 888 A.2d 225 (Del. 2005).  Not surprisingly, Plaintiffs provide no support for this nonsensical proposition.

Plaintiffs' arguments with respect to Virginia law likewise fail.  *See* PB 24-25.  Like Delaware law, the Virginia code promotes flexibility by permitting corporations to issue preferred stock that provides for dividends "calculated *in any manner*."  Va. Code § 13.1-638(C)(3) (emphasis added).  Nothing in the hundred year old cases on which Plaintiffs rely suggests that any particular Virginia-law restrictions exist on how Virginia companies draft stockholder agreements.  Plaintiffs cite *Drewry-Hughes Co. v. Throckmorton*, 92 S.E. 818 (Va. 1917), for the proposition that Virginia law requires preferred stock dividends to be "definitely fixed."  PB 25.  But Plaintiffs conspicuously omit the remainder of the quoted passage, which says:  "The character and privileges of the preferred stock are definitely fixed *by a sentence in the stock certificate* issued to the preferred stockholders." *Id.* at 819 (emphasis added).  That standard is easily met here:  the Treasury dividend is expressly identified in the text of the Treasury Stock Certificates.  Plaintiffs also cite *Kain v. Angle*, 69 S.E. 355, 357 (Va. 1910), but that decision merely states that preferred stock dividends are senior to any common stock dividends, which is consistent with the senior priority of the Treasury stock.

Finally, Plaintiffs assert that the Third Amendment is impermissible because it may preclude the payment of dividends to non-Treasury shareholders, such as Plaintiffs. *See* PB 24, n. 21. But "[t]his argument fails because the plaintiffs have not shown their certificates guarantee that more senior shareholders will not exhaust the funds available for distribution as dividends." *Perry Capital*, 848 F.3d at 1110. Indeed, Plaintiffs' stock certificates authorize the Enterprises to issue more senior stock, even if it would diminish the existing shareholders' ability to receive dividends.[9] Plaintiffs have not identified any case holding that stockholders have a right to dividends, such that a dividend paid to preferred stockholders could not foreclose the possibility of dividends being paid to lesser tiers of stock. Indeed, *Johnson v. Johnson & Briggs, Inc.*, 122 S.E. 100, 103 (Va. 1924) (cited at PB 25) describes the possibility of "unlimited gain" for the holder of common stock as merely a "hope." Further, Plaintiffs' cases authorized payments to preferred shareholders by applying the plain language of agreements that plainly advantaged preferred shareholders over common shareholders. *See id.*; *Drewry-Hughes*, 92 S.E. at 818.[10] That is unsurprising: Delaware and Virginia law authorize a corporation to issue stock in classes that have preference over other classes; neither state's laws *require* that the preference given be limited to ensure that junior stockholders receive a dividend. The Treasury stock certificates plainly comply with these state law provisions.

## CONCLUSION

For the foregoing reasons and those in Treasury's briefs, FHFA, Fannie Mae, and Freddie Mac respectfully request the Court dismiss with prejudice all claims asserted against them.

---

[9]   *See, e.g.*, FHFA OB Ex. B § 9 (Fannie Mae, Certificate of Design., Series 2008-2 Preferred Stock); Ex. C § 9 (Freddie Mac, Certificate of Design., Series Z Preferred Stock); Freddie Mac, 8th Am. & Restated Cert. Design. for Common Stock, § 9 (attached as **Exhibit D**).

[10]   Even before the Third Amendment, Plaintiffs' ability to receive dividends was limited by the PSPAs' "flat prohibition" on the Enterprises paying dividends to any other shareholders without Treasury's consent. *Perry Capital*, 848 F.3d at 1082; *see also* FHFA OB Ex. A § 5.1.

Dated:  July 17, 2017
        Wilmington, DE

_____/s/ Robert C. Maddox_____
Robert C. Maddox (DE Bar No. 5356)
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
stearn@rlf.com
maddox@rlf.com

*Attorneys for Defendants Federal Housing*
*Finance Agency, Federal National Mortgage*
*Association, and Federal Home Loan*
*Mortgage Corporation*

Michael Joseph Ciatti
(admitted *pro hac vice*)
Graciela Maria Rodriguez
(admitted *pro hac vice*)
King & Spalding LLP
1700 Pennsylvania Avenue N.W.
Washington, DC 20006
(202) 626-5508
(202) 626-3737
mciatti@kslaw.com
gmrodriguez@kslaw.com

*Attorneys for Defendant Federal Home Loan*
*Mortgage Corporation*

Howard N. Cayne (admitted *pro hac vice*)
Asim Varma (admitted *pro hac vice*)
David B. Bergman (admitted *pro hac vice*)
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue
Washington, DC 20001
(202) 942-5000
Howard.Cayne@apks.com
Asim.Varma@apks.com
David.Bergman@apks.com

*Attorneys for Defendant Federal Housing*
*Finance Agency*

Jeffrey W. Kilduff
Michael Walsh
O'Melveny & Meyers LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
(202) 383-5300
jkilduff@omm.com
mwalsh@omm.com

*Attorneys for Defendant Federal National*
*Mortgage Association*