IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DAVID JACOBS and GARY HINDES, on behalf of )
themselves and all others similarly situated, and )
derivatively on behalf of the Federal National Mortgage )
Assoc. and Federal Home Loan Mortgage Corp., )
)
*Plaintiffs*, )
)
v. )
) Civ. No. 15-708-GMS
THE FEDERAL HOUSING FINANCE AGENCY, in its )
capacity as Conservator of the Federal National )
Mortgage Assoc. and the Federal Home Loan Mortgage )
Corp., and THE UNITED STATES DEPARTMENT OF )
THE TREASURY, )
)
*Defendants*, )
)
and )
)
THE FEDERAL NATIONAL MORTGAGE ASSOC. )
and THE FEDERAL HOME LOAN MORTGAGE )
CORP., )
)
*Nominal Defendants*. )

Myron T. Steele, Esq., Michael A. Pittenger, Esq., Christopher N. Kelly, Esq., and Alan R. Silverstein, Esq. of Potter Anderson & Corroon LLP, Wilmington, DE. Counsel for Plaintiffs.

Robert J. Stearn, Jr., Esq. and Robert C. Maddox, Esq. of Richards, Layton & Finger, P.A., Wilmington, DE. Counsel for Defendants Federal Housing Finance Agency, Federal National Mortgage Assoc., and Federal Home Loan Mortgage Corp. Of Counsel: Howard N. Cayne, Esq., Asim Varma, Esq., and David B. Bergman, Esq. of Arnold & Porter Kaye Scholer LLP, Washington, DC; Jeffrey W. Kilduff, Esq. and Michael Walsh, Esq. of O'Melveny & Meyers LLP, Washington, DC; and Michael Joseph Ciatti, Esq. and Graciela Maria Rodriquez, Esq. of King & Spalding LLP, Washington DC.

David C. Weiss, Esq. and Jennifer L. Hall, Esq. of U.S. Attorney's Office, Wilmington, DE. Counsel for Defendant U.S. Dept. of Treasury. Of Counsel: Chad A. Readler, Esq., Diane Kelleher, Esq., Thomas D. Zimpleman, Esq., Deepthy Kishore, Esq., and Robert C. Merritt, Esq. of U.S. Dept. of Justice Civil Division, Washington DC.

**MEMORANDUM OPINION**

Dated: November 27, 2017
Wilmington, Delaware

SLEET, District Judge

## I. INTRODUCTION

This action is one of several lawsuits filed by the stockholders of the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Association ("Freddie Mac") challenging what the parties call a "Net Worth Sweep," which is a provision in the Third Amendment to the Amended and Restated Senior Preferred Stock Purchase Agreements (the "Third Amendment") governing the payment of dividends. The Third Amendment was entered into by the United States Department of the Treasury ("Treasury") and the Federal Housing Finance Agency (the "Agency," and collectively with Fannie Mae, Freddie Mac, and Treasury, the "Defendants"). At the time, the Agency was acting in its capacity as conservator of Fannie Mae and Freddie Mac (each a "Company," and collectively, the "Companies"). Plaintiffs David Jacobs and Gary Hines (collectively, "Plaintiffs") seek equitable relief based on their assertion that the Net Worth Sweep violates state statutory schemes governing corporations and unjustly enriches Defendants. (D.I. 62 ¶¶ 79-108).

The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1367. Currently pending before the court are Defendants' motions to dismiss the complaint. (D.I. 65, D.I. 67). Defendants have raised a multitude of arguments as to why the complaint should be dismissed, including the anti-injunction clause in the Housing and Economic Recovery Act of 2008 ("HERA"), 12 U.S.C. § 4617(f), the succession clause in HERA, 12 U.S.C. § 4617(b)(2)(A)(i), the requirement to state a claim under Fed. R. Civ. P. 12(b)(6), issue preclusion and, with respect to Treasury alone, sovereign immunity. (D.I. 66, D.I. 68). For the reasons discussed below, the court finds that the anti-injunction clause in Section § 4617(f) deprives it of

subject matter jurisdiction. Because Plaintiffs do not clear this threshold hurdle, the court is dismissing the complaint without reaching Defendants' other arguments.

## II. BACKGROUND

### A. Fannie Mae and Freddie Mac

Fannie Mae and Freddie Mac are government-sponsored enterprises (a "GSE") created to increase liquidity in the mortgage market. (D.I. 68 at 5; D.I. 62 ¶¶ 30-31). A GSE is a corporation established by congressional charter but privately owned, meaning its stock is owned by private entities and individuals. 2 U.S.C. 622(8). For purposes of corporate governance, the Companies had to designate the law of the state in which its principal office is located or Delaware General Corporation Law. (D.I. 62 at ¶ 32 (citing 12 C.F.R. § 1710.10)). Fannie Mae selected Delaware law, and Freddie Mac selected Virginia law. (*Id.* at ¶ 32).

In 2008, a global financial crisis and nationwide decline in the housing market caused the Companies to suffer loses. (*Id.* at ¶ 33). To address the crisis, Congress passed HERA, which authorized the Agency to place the Companies into conservatorship or receivership. (*Id.* ¶ 34; *see also* 12 U.S.C. § 4617(2)). On September 6, 2008, the Agency exercised its power under HERA and placed the Companies into conservatorship. (D.I. 62 ¶ 35). Shortly thereafter, each Company, acting through the Agency as a conservator, entered into a Preferred Stock Purchase Agreement (a "Stock Purchase Agreement") with Treasury. (*Id.* at ¶ 36). Under the Stock Purchase Agreements, Treasury committed to advance funds to the Companies for each quarter in which the Companies' liabilities exceeded its assets, so as to maintain the Companies' positive net worth. (D.I. 68 at 7). The funding commitment was capped at $100 billion for each Company. (D.I. 62 ¶¶ 8, 36). In return, Treasury received from each Company shares of a newly created class of senior preferred stock worth $1 billion and warrants to purchase 79.9% of the common stock. (*Id.* ¶ 8). The Stock

2

Purchase Agreements gave Treasury the right to: (1) an aggregate liquidation preference equal to $1 billion plus the sum of all additional amounts drawn on Treasury's funding commitment; and (2) a quarterly dividend equal to a percentage of the outstanding liquidation preference: 10%, if paid in cash, or 12%, if paid "in-kind." (*Id.* at ¶¶ 8-9). If the quarterly dividend was in-kind, the amount would be added to the liquidation preference. (*Id.* at ¶ 8).

The Stock Purchase Agreements were amended twice in 2009—first, on May 6, 2009, to raise the funding commitment for each Company from $100 billion to $200 billion and, again, on December 24, 2009, to raise the funding commitment according to a formula that would be capped at the end of 2012. (D.I. 68 at 8). On August 17, 2012, Treasury and the Agency, acting as conservator for the Companies, entered into the Third Amendment. (D.I. 62 ¶ 1). Among other things, the Third Amendment changed the formula for calculating the quarterly dividend. (D.I. 68 at 9). Now, the Companies would owe a quarterly dividend in the amount (if any) of the Company's positive net worth, minus a capital reserve. (D.I. 66 at 9). Plaintiffs refer to this dividend formula as a "Net Worth Sweep," and allege that Defendants agreed to the Net Worth Sweep as way to improperly expropriate for the federal government the value the Companies were generating after they returned to profitability in 2012. (D.I. 62 ¶¶ 39, 42, 46).

**B.  Plaintiffs**

Plaintiff Jacobs has continuously held stock in Fannie Mae and Freddie Mac since November 2009. (D.I. 62 ¶ 24). According to the complaint, Plaintiff Hindes "has been an investor in Fannie Mae and Freddi Mac since 2011." (*Id.* at ¶ 25). The complaint does not allege, however, that Hindes currently holds any Fannie Mae stock. In addition, Hindes currently holds Freddie

3

Mac stock purchased in February 2015, i.e., purchased *after* Defendants executed the Third Amendment that serves as the basis for his claims.[1] (*Id.*).

## III. STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(1), a complaint may be dismissed for "lack of subject-matter jurisdiction." Challenges to subject matter jurisdiction may be facial or factual. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). A facial attack contests the sufficiency of the pleadings, whereas a factual attack contests the sufficiency of jurisdictional facts. *Id.* According to Defendants, Section 4617(f) is a facial attack to subject matter jurisdiction.[2] (D.I. 66 at 9; D.I. 68 at 9). In reviewing a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

## IV. DISCUSSION

Section 4617(f) of HERA states, in relevant part, that "no court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator or a receiver." 12 U.S.C. § 4617(f). Courts construing the scope of Section 4617(f) have relied on decisions addressing Section 1821(j), a nearly identical jurisdictional bar applicable to conservatorships with the Federal Deposit Insurance Corporation ("FDIC") and its predecessor, the Resolution Trust

---

[1] The timing of Hindes' investments in the Companies raises questions regarding his standing and adequacy as a representative plaintiff. *See, e.g., Quadrant Structured Prod. Co., Ltd. v. Vertin*, 102 A.3d 155, 178 (Del. Ch. 2014) (describing Delaware's contemporaneous and continuous ownership requirements for derivative plaintiffs); *In re Heckmann Corp. Sec. Litig.*, 2013 WL 2456104, at *11 (D. Del. June 6, 2013) (stating that the interests of the putative class representative is usually similar to and sufficiently aligned with the potential class members, because all class members suffered the same harm).

[2] Plaintiffs have not challenged this assertion.

4

Corporation ("RTC").[3] *Natural Res. Def. Council, Inc. v. Fed. Housing Fin. Agency*, 815 F. Supp. 2d 630, 641 (S.D.N.Y. 2011), *aff'd sub nom. Town of Babylon v. Fed. Housing Fin. Agency*, 699 F.3d 221 (2d Cir. 2012); *Saxton v. Fed. Housing Fin. Agency*, 245 F. Supp. 3d 1063, 1075 (N.D. Iowa 2017) (stating that Section 4617(f) has the same scope as the substantially similar anti-injunction provision in Section 1821(j)).

As construed, Section 4617(f) deprives the court of subject matter jurisdiction over claims seeking equitable and injunctive relief, unless the challenged actions are outside the Agency's statutory powers. *See Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 612 (D.C. Cir. 2017) (Plaintiffs burden is to show that the Agency's actions were "frolicking outside of statutory limits as a matter of law"); *see also Gross v. Bell Sav. Bank PA SA*, 974 F.2d 403, 407 (3d Cir. 1992) (stating that Section 1821(j) permits review only "where the [FDIC] is acting clearly outside its statutory powers"). As a threshold matter, Plaintiffs seek "equitable and injunctive relief" against both the Agency and Treasury. (D.I. 62 ¶ C). Specifically, Plaintiffs seek: (i) a declaratory judgment that the Net Worth Sweep is void and unenforceable under Section 151 of the Delaware General Corporation Law ("DGCL") and Section 13.1-638 of the Virginia Stock Corporation Act ("VSCA"); (ii) a declaratory judgment that Treasury was unjustly enriched, (ii) rescission of the Net Worth Sweep; and (iv) restitution. (*Id.* at ¶ 84, 92, 99, 106, and Prayer for Relief). There is no dispute that this relief, if granted against the Agency when the Agency was acting within its

---

[3] Section 1821(j) is codified in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), and states in relevant part: "no court may take any action ... to restrain or affect the exercise of powers or functions of the [FDIC or RTC] as a conservator or a receiver." 12 U.S.C. § 1821(j).

5

power, would restrain or affect the Agency's use of its power.[4] (D.I. 69 at 33-35, 39). This leaves two questions for the court. Was the Third Amendment outside the Agency's statutory powers? Would the same equitable relief, if granted against Treasury, restrain or affect the Agency's use of its powers? Each of these questions will be addressed in turn.

## A.  Claims Against The Agency

The powers of the Agency, as conservator, are "defined by" its governing statute, HERA, without any exception or limitation for compliance with other laws. *See Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 398 (3d Cir. 1991) (stating that the powers of the RTC as conservator or receiver "are defined by FIRREA"). Where the Agency performs functions assigned to it under HERA, equitable and injunctive relief will be denied "even where [it] acts in violation of other statutory schemes." *Gross*, 974 F.2d at 407; *see also Rosa*, 938 F.2d at 398 ("[T]o the extent of a conflict between [Section 1821(j)] and provisions of ERISA authorizing relief, § 1821(j) controls"). Plaintiffs try to avoid this adverse precedent by arguing that the purported violations of the DGCL and VSCA (i.e., state corporate law) are not claims based on "other statutory schemes." (D.I. 69 at 39). Instead, these violations "contravened and exceeded [the Agency's] statutory authority under HERA itself." (*Id.*). For the reasons explained below, the court disagrees.

---

[4] Courts have consistently held that rescission, restitution, and declaratory judgments restrain or affect the conservator's powers. *See, e.g., BKWSpokane, LLC v. Fed. Deposit Ins. Corp.*, 663 Fed. App'x 524, 527 (9th Cir. 2016) (stating that Section 1821(j) bars a claim for unjust enrichment); *Hindes v. Fed. Deposit Ins. Corp.*, 137 F.3d 148, 159 (3d Cir. 1998) (agreeing that Section 1821(j) precluded claims for declaratory judgment and rescission); *Freeman v. Fed. Deposit Ins. Corp.*, 56 F.3d 1394, 1399 (D.C. Cir. 1995) (stating that Section 1821(j) bars declaratory relief and rescission); *Centennial Assocs. Ltd. P'ship v. Fed. Deposit Ins. Corp.*, 927 F. Supp. 806, 812 (D.N.J. 1996) (stating that Section 1821(j) deprives courts of the power to grant rescission).

6

The court will first explain why the Agency was acting within its statutory powers when it executed the Third Amendment and then explain why it rejects Plaintiffs' arguments to the contrary. Only two of Plaintiffs' arguments require extended discussion: (1) that HERA's succession clause incorporates into the Agency's powers any limitations the DGCL and VSCA placed on the Companies' powers, and (2) that the Agency exceeded its powers by failing to follow HERA's procedures for repudiating private contracts. Plaintiffs' remaining arguments are a hodgepodge that can be summarily rejected.

### 1. The Agency's Statutory Powers

This court concludes, like several other courts, that the Agency acted within its powers under HERA when it entered into the Third Amendment. Under Section 4617(b), the Agency may be appointed conservator "for the purpose of reorganizing, rehabilitating, or winding up the affairs of a regulated entity." 12 U.S.C. § 4617(a)(2). The Agency has the power to: (i) "take over the assets of and operate" the Companies, (ii) "conduct all business" of the Companies, and (iii) "transfer or sell any asset" of the Companies "without any approval, assignment, or consent." 12 U.S.C. § 4617(b)(2)(B)&(G). In addition, the Agency has the power to take any actions: (i) "necessary to put [the Companies] in a sound and solvent condition;" and (ii) "appropriate to … preserve and conserve the assets of the regulated entity." 12 U.S.C. § 4617(b)(2)(D).

The Stock Purchase Agreement and the Third Amendment thereto provided a funding commitment intended to ensure that the Companies remained in a sound and solvent condition. (*See* D.I. 66-1 at ¶ A). In exchange for the funding commitment, the Agency transferred or sold (or committed to transfer or sell) assets of the Companies to the U.S. Treasury, in the form of quarterly dividends and a liquidation preference. (*Id.* at § 3). The Third Amendment changed the terms by which those assets would be transferred or sold. (D.I. 66-3). Accordingly, as several

7

other courts have found, the Third Amendment falls squarely within the powers granted to the Agency under HERA, because renegotiating dividend agreements, managing debt obligations, and ensuring ongoing access to capital are some of the quintessential tasks of reorganizing, operating, and preserving a business. *See Perry Capital*, 864 F.3d at 607 (finding that the Agency's execution of the Third Amendment fell squarely within its statutory authority to operate the Companies, reorganize their affairs, and take such action as may be appropriate to carry on their business); *Collins v. Fed. Housing Fin. Agency*, 254 F. Supp. 3d 841, 846 (S.D. Tex. 2017) (stating that plaintiffs failed to demonstrate that the Third Amendment was "outside the scope of [the Agency's] broad authority as conservator"); *Saxton*, 245 F. Supp. 3d at 1076 (finding that the Agency's powers as conservator "plainly allow for the actions contemplated by the Third Amendment"); *Roberts*, 243 F. Supp. 3d at 963 ("All told, the Plaintiffs have not sufficiently alleged that [the Agency] acted outside the bounds of its statutory authority" when executing the Third Amendment); *Robinson v. Fed. Housing Fin. Agency*, 223 F. Supp. 3d 659, 667-71 (E.D. Ky. 2016) (holding that the Third Amendment was within the Agency's powers and functions).

### 2. HERA's Succession Clause

Plaintiffs argue that the Third Amendment exceeded the Agency's statutory powers under HERA, because it contravened the DGCL and VSCA, i.e., the state corporate law of Delaware and Virginia respectively. (D.I. 69 at 36-38). According to Plaintiffs, HERA incorporated all of the restrictions state corporate law imposes on the Companies and, as a result, the Agency "may not take actions as conservator that Fannie [Mae] and Freddie [Mac] could not themselves have taken." (*Id.* at 36-37). Plaintiffs base this argument on the succession clause in HERA, which states that the Agency, as conservator, "immediately succeed[s] to ... all rights, titles, powers, and privileges

8

of the regulated entity, and of any stockholder, officer, or director of [the Companies] with respect to the [Companies]."[5] (*Id.* at 36 (citing 12 U.S.C. § 4617(b)(2)(A))).

The court finds this argument unpersuasive for many reasons. First, Plaintiffs' reading of Section 4617(f)—which would make equitable relief against the Agency available in every situation where it would be available against the Companies—renders Section 4617(f) superfluous. As a general rule of statutory construction, courts "strive to avoid a result that would render statutory language superfluous, meaningless, or irrelevant." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997). Second, Plaintiffs' reading is contrary to well-established case law that equitable relief will be denied, "even where the [conservator] acts in violation of other statutory schemes." *Gross*, 974 F.2d at 407; *Rosa*, 938 F.2d at 397 (rejecting argument that the FDIC exceeds its statutory authority for purposes of Section 1821(j) when the challenged acts are illegal under ERISA). If a conservator exceeded its statutory powers when it violated state law, then claims based on violations of other statutory schemes would not have been barred by Section 1821(j) or Section 4617(f). Third, Plaintiffs' interpretation is inconsistent with the purpose of HERA itself. The sweeping limitations Section 4617(f) places on judicial review "may appear drastic," but that fully accords with Congress' intent to broadly empower the Agency to act in times of extraordinary financial crisis. *Perry Capital*, 864 F.3d at 605.

---

[5] Plaintiffs also base their argument on two other HERA provisions: the Agency's discretionary authority to perform all functions of the Companies "in the name of" the Companies," and to operate the Companies "with all the powers of the shareholders, the directors, and the officers." (D.I. 69 at 36 (citing 12 U.S.C. § 4617(b)(2)(B))). Because these grants of authority "are permissive powers of [the Agency] and not duties with which they are required to comply," *see Robinson*, 223 F. Supp. 3d at 669 (emphasis in original omitted), they are far weaker statutory grounds for Plaintiffs' argument than the succession clause. So the court will not address them.

Finally, the cases Plaintiffs cite in support of their argument are easily distinguishable. (*See*, D.I. 69 at 36-37). *O'Melveny & Myers* addressed whether "federal common law" preempted state common law when the FDIC asserted state tort claims, in its capacity as a receiver. *O'Melveny & Myers v. Fed. Deposit Ins. Corp.*, 512 U.S. 79, 86 (1994). *O'Melveny & Myers* did not address, in any manner whatsoever, whether the FDIC's statutory powers were curtailed by state law when it stepped into the shoes of a failed bank. In *Bank of Manhattan* and *Sharpe*, the courts found that Section 1821(j) did not bar plaintiffs from asserting a breach of contract claim against the FDIC, in its capacity as receiver for a bank, because the FDIC was bound by the terms of a private commercial contract executed by plaintiffs and the bank before the receivership. *See Bank of Manhattan, N.A. v. Fed. Deposit Ins. Corp.*, 778 F.3d 1133, 1135-36 (9th Cir. 2015); *Sharpe v. Fed. Deposit Ins. Corp.*, 126 F.3d 1147, 1154-55 (9th Cir. 1997). Here, Plaintiffs are not asserting a breach of contract claim. Indeed, Plaintiffs do not have a private commercial contract with either Fannie Mae or Freddie Mac. Finally, neither *Fleischer* nor *Ridder* mention FIRREA (the act containing Section 1821(j)), let alone address whether FIRREA's grant of authority to the FDIC incorporated state law restrictions on the bank's powers. *See Ridder v. CityFed Fin. Corp.*, 47 F.3d 85, 87 (3d Cir. 1995); *Fleischer v. Fed. Deposit Ins. Corp.*, 70 F. Supp. 2d 1238 (D. Kan. 1999). For all of these reasons, the court is not persuaded that HERA incorporated state law limitations on the Companies' authority in such a manner that the Agency exceeds its statutory authority under HERA when it violates state law.

### 3. HERA's Repudiation of Contracts Clause

Plaintiffs argue that the Agency exceeded its statutory authority under HERA by not complying with the requirements of Section 4617(d), which governs the Agency's repudiation of contracts between the Companies and third-parties. (D.I. 69 at 38-39). Plaintiffs' argument on

10

this point is cryptic, but it appears to string together the following assertions. The bylaws of a corporation are treated by the courts like contracts. (*Id.*). Thus, Plaintiffs had a contract with the Companies. The bylaws of Fannie Mae and Freddie Mac specified that they would be governed by the state law of Delaware and Virginia, respectively. (D.I. 62 ¶ 32). Thus, the terms of Plaintiffs' contract with the Companies incorporated the DGCL and the VSCA. (*Id.* at ¶¶ 52, 55). The Third Amendment purportedly violated Section 151 of the DGCL and Section 13.1-638 of the VSCA. (*Id.* at ¶¶ 55, 83). Thus, the Third Amendment "repudiated" the Companies' contract with Plaintiffs. (D.I. 69 at 38-39). HERA requires that any contracts repudiated by the Agency must be repudiated within the 18 months following the Agency's appointment as a conservator. (*Id.*). The Agency became conservator of the Companies in 2008 and the Third Amendment was executed in 2012. (D.I. 62 ¶ 1, 35). Thus, the Agency did not repudiate Plaintiffs' contract with the Companies within 18 months of its appointment. (D.I. 69 at 38-39). The failure to repudiate a contract within the time allowed under Section 4617(d) means the Agency exceeded its statutory powers granted in Section 4617(b) to operate the business and sell or transfer its assets. (*Id.*).

Laid out in this way, the flaws in Plaintiffs' argument become clear. Plaintiffs ask the court to equate a violation of a state statute with the act of repudiating a contract, but cite no authority to support their assertion.[6] Plaintiffs also cite no authority for the proposition that the Agency's failure to comply with the 18 month requirement for repudiating contracts means the Agency exceeded its powers to operate the business. Indeed, cases dismissing equitable claims under

---

[6] Plaintiffs cite to cases stating that bylaws "have all the force of contracts." (D.I. 69 at 38 (citing *Lee v. Va. Educ. Ass'n, Inc.*, 1969 WL 101681, at *1 (1969); *Allen v. El Paso Pipeline GP Co., LLC*, 90 A.3d 1097, 1107 (Del. Ch. 2014)). But this only shows that courts will rely on contract principles in deciding how to construe and enforce bylaws.

11

Section 1821(j), notwithstanding allegations that the conservator failed to timely repudiate a contract, indicate that the conservator does not exceed its statutory authority by failing to comply with the 18 month timing requirement. *See MBIA Ins. Corp. v. Fed. Deposit Ins. Corp.*, 708 F.3d 234, 247 (D.C. Cir. 2013) (dismissing claims seeking a declaratory judgment and injunctive relief under Section 1821(j) notwithstanding fact that claims were based on receiver's failure to repudiate a contract in a timely manner); *Bender v. CenTrust Mortg. Corp.*, 833 F. Supp. 1540, 1542-43 (S.D. Fla. 1992) *aff'd*, 51 F.3d 1027 (11th Cir. 1995) (same). Accordingly, the court finds that, even if the Third Amendment violated state law and that violation should be treated like a repudiation of a contract, the Agency did not exceed its statutory powers in failing to repudiate the contract in a timely manner.

### 4. Plaintiffs' Hodgepodge of Other Arguments

Plaintiffs raise a hodgepodge of weaker arguments as to how the Agency exceeded its statutory powers under HERA. Each of these arguments are rejected for the reasons explained below. First, Plaintiffs argue that the transfer of the Companies assets "ignore HERA's detailed procedures and order of priorities for the distribution of assets during liquidation," codified at 12 U.S.C. § 4617(b)(3)-(9), (c). (D.I. 69 at 42). The Companies, however, are not in liquidation, so those provisions do not apply to the Net Worth Sweep.

Second, Plaintiffs make the cursory assertion that, under Section 4617(b)(2)(G), the Agency may only transfer assets "as conservator or receiver," but the Agency "was not acting in either capacity" when it paid the Net Worth Sweep in accordance with the terms of the Third Amendment. (*Id.*). The Agency has only three capacities: conservator, receiver, or regulator. Plaintiffs have made no argument and cited no authority to show that the Agency was acting as a regulator when it executed the Third Amendment. In addition, the Complaint alleges that the Third

12

Amendment was executed by the Agency "in its capacity as conservator of Fannie Mae and Freddie Mac." (D.I. 62 ¶ 1). Accordingly, this argument fails.

Third, Plaintiffs assert that the Net Worth Sweep exceeded the Agency's powers, because it did not put the Companies in a "sound and solvent condition," and/or "preserve and conserve their assets and property," as HERA purportedly requires. (*Id.* at 43 (internal brackets omitted)). As several other courts have explained in rejecting similar arguments, these are permissive powers under HERA, not obligatory. *Perry Capital*, 864 F.3d at 606-07. The Agency's "alleged failure to exercise its permissive power ... does not remove Plaintiff's claims from the ambit of Section 4617(f)'s bar on equitable relief." *Robinson*, 223 F. Supp. 3d at 670; *Roberts*, 243 F. Supp. 3d at 962–63; *Saxton*, 245 F. Supp. 3d at 1076.

Similarly, Plaintiffs argue that the Net Worth Sweep exceeded the Agency's powers, because it did not "maximize the net present value return." (D.I. 69 at 43). As the Fifth Circuit explained in rejecting this same argument: "[Plaintiffs] fail[] (or refuse[]) to recognize the difference between the exercise of a function or power that is clearly outside the statutory authority of the [Agency] on the one hand, and improperly or even unlawfully exercising a function or power that is clearly authorized by statute on the other." *Ward v. Resolution Trust Corp.*, 996 F.2d 99, 103 (5th Cir. 1993). None can question that the Agency, as conservator, is statutorily authorized to transfer or sell the assets of the Companies. *Id.* So, "even assuming arguendo, that (as alleged by [Plaintiffs]) the [Agency] exercised the power or function of [transferring or selling assets] in a way that failed to maximize the net present value return or to afford fair and consistent treatment to all [stockholders], [Plaintiffs] could not prevail." *Id.* "For, even if the [Agency] improperly or unlawfully exercised an authorized power or function, it clearly did not engage in an activity outside its statutory powers." *Id.*

13

Finally, Plaintiffs suggest that the powers granted to the Agency under Section 4617 are limited to "routine transfers of discrete assets," which the Net Worth Sweep purportedly was not. (D.I. 69 at 44). Plaintiffs, again, cite no authority supporting this suggestion. The plain text of Section 4617 includes no such limitation. And, reading such a limitation into Section 4617 would be contrary to the very purpose for which HERA was enacted—to mitigate the effects of a global financial crisis that was far from routine.

### B.   Claims Against Treasury

It is well established that Plaintiffs cannot make an end-run around Section 4617(f) by asserting claims for equitable and injunctive relief against the Agency's contractual counterparty, when the contract in question was within the scope of the Agency's powers. *Perry Capital LLC v. Lew*, 70 F. Supp. 3d 208, 222 (D.D.C. 2014). Section 4617(f) bars claims that "restrain or affect" the Agency's exercise of its powers, and a claim against the Agency's counterparty "affect[s]" the Agency's exercise of its powers. *See Perry Capital*, 864 F.3d at 615 ("[T]he effect of any injunction or declaratory judgment aimed at Treasury's adoption of the Third Amendment would have just as direct and immediate an effect as if the injunction operated directly on [the Agency]."); *Dittmer Prop., L.P. v. Fed. Deposit Ins. Corp.*, 708 F.3d 1011, 1017 (8th Cir. 2013) (finding that a claim against the FDIC's counterparty "would certainly restrain or affect FDIC's powers"); *Hindes v. Fed. Deposit Ins. Corp.*, 137 F.3d 148, 160 (3d Cir. 1998) (barring a claim against a third party which would "have the same practical result as an order directed against the FDIC"); *Roberts*, 243 F. Supp. 3d at 960 ("It takes two to tango, and undoing one side of the Third Amendment against Treasury necessarily affects [the Agency], which is, after all, the other party to the Third Amendment."). Accordingly, Section 4617(f) bars Plaintiffs' claims against Treasury. *See Saxton*, 245 F. Supp. 3d at 1078 (holding that plaintiffs' claims against Treasury are barred by

14

Section 4617(f) because such relief would undoubtedly restrain or affect the Agency's functions as a conservator); *Robinson*, 223 F. Supp. 3d at 666 (same).

### C. Motion to Strike

Plaintiffs have asked the court to take judicial notice of documents purportedly undermining any assertion by Defendants that: (1) the Net Worth Sweep was necessary to stop the Companies' circular practice of borrowing funds from Treasury in order to pay Treasury the quarterly dividend; and (2) the Agency entered into the Third Amendment in order to preserve and conserve the assets of the Companies. (D.I. 75 at 3). In the alternative, Plaintiffs ask the court strike any arguments that rely on these assertions. The court denies the motion as moot. The court did not rely on these assertions or any facts related to these assertions in deciding the motion to dismiss, as that would have been improper under the standard of review for a facial attack on subject matter jurisdiction.

## V. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (D.I. 65, D.I. 67) are granted. The complaint (D.I. 62) is dismissed with prejudice, because lack of subject matter jurisdiction cannot be cured by amendment. *See U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014). Plaintiffs' motion for judicial notice of documents or, in the alternative, to strike certain arguments in Defendants' briefs (D.I. 75) is denied as moot. An appropriate order will be entered.